UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZABEN, LLC, and WEINSTOCK PARTNERS LLC, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK and JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)<br><br>Defendants. | Civil Action No. 7:23-cv-08178<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Zaben, LLC, and Weinstock Partners LLC ("Plaintiffs") on behalf of themselves and all others similarly situated, for their Class Action Complaint against defendants John Hancock Life Insurance Company of New York ("JHNY") and John Hancock Life Insurance Company (U.S.A.) ("JHUSA" and, together with JHNY, "John Hancock," or "Defendants"), state as follows:

**NATURE OF THE ACTION**

1.      This is a class action brought on behalf of Plaintiffs and similarly situated owners of certain universal life insurance policies insured by John Hancock. Plaintiffs seek to represent a class of policyholders who have been forced to pay unlawful and excessive cost of insurance ("COI") charges by John Hancock.

2.      Universal life policies are variable rate contracts. Unlike term or whole life policies, where premiums are generally fixed and disclosed in advance, universal life policies have separate policy charges that are determined on an ongoing, prospective basis, and those charges—and the

1

rates used to calculate them—are designed to go up or down as the insurer's expectations of future cost factors change. By far the largest charge in a universal life policy is the COI charge, which is generally calculated on a monthly basis by multiplying the net amount at risk (i.e., the death benefit amount minus the policyholder's account value) by the COI rate, and then deducted from the policyholder's account.

3. Where permitted by the policy language, COI rates are initially determined on an after-tax basis. That is, the insurer sets COI rates and other charges to generate a certain amount of after-tax profit. Prior to 2018, virtually every insurer used a 35% corporate income tax rate assumption for product pricing.

4. In late 2017, however, Congress passed the Tax Cuts and Jobs Act (TCJA), which, among other things, reduced the corporate income tax rate from 35% to 21%. This was a boon for life insurance companies like John Hancock. Manulife Financial Corporation, the publicly-traded holding company that owns both JHNY and JHUSA, reported in 2018 that TCJA would result in "expected ongoing benefit to net income attributed to shareholders and core earnings of approximately $240 million per year commencing in 2018." Other publicly-traded life insurers like Protective, Prudential, and Lincoln Financial similarly reported to their shareholders that the TCJA would result in hundreds of millions, and in some cases billions, of dollars in additional profits. The Society of Actuaries (SOA) quickly incorporated the change in its industry tools. For example, in its 2021 update to its Life Pandemic Model: U.S. Life Insurance Industry Moderate Scenario, it changed the assumed tax rate from 35% to 21%.

5. The passage of the TCJA should have led to a significant reduction in COI rates for John Hancock's universal life policies. Under a 35% tax rate, an insurer like John Hancock would have to earn pre-tax profits of roughly $154 million to realize an after-tax profit of $100 million.

With a 21% tax rate, John Hancock needs to generate only $126.6 million in pre-tax profits to produce the same $100 million in after-tax profits. This change alone would indicate that, following the enactment of the TCJA, COI rates should have been reduced by 18%.[1]

6. John Hancock, however, has not reduced COI rates at all following the passage of the TCJA; instead, it has in fact continued to *increase* COI rates according to a pre-TCJA COI rate scale. This violates the COI rate provision in Plaintiffs' policies (and thousands of other John Hancock policies). Both of Plaintiffs' policies expressly require that COI rates "**will be based on our expectations of** future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and **tax assumptions**[.]" This means that if Hancock's expectations as to future tax liability improve (that is, if it expects future tax liability to decline), COI rates must be adjusted downward to reflect the improvement. Yet Hancock has completely *ignored* its post-TCJA tax assumptions, and kept for itself the hundreds of millions of dollars in windfall profits that it is generating as a result of the TCJA. And it has done so despite reviewing, on an annual basis, both its (a) expectations of future cost factors and (b) its COI rates in connection with its annual statements filed with the National Association of Insurance Commissioners (NAIC).

7. John Hancock's conduct is particularly galling given that life insurers have not hesitated to *increase* COI rates as a result of adverse changes in tax laws. In 1990, Congress passed the Revenue Reconciliation Act of 1990, which changed how insurers, for federal income tax purposes, amortized expenses associated with acquiring new business, and resulted in what insurance companies claimed were an increase in insurer tax liability.[2] Many insurers responded by increasing COI charges to pass along the increased tax liabilities to policyholders. However,

---

[1] $126.6 million is 82% of $154 million.
[2] These changes are often referred to as the "DAC Tax," or "DAC Tax Reform." "DAC" stands for "deferred acquisition costs."

some policyholders, and state regulators, were able to successfully challenge these rate increases in court or through regulatory action because taxes were not enumerated in the policies as a factor on which COI rates could or would be based. *See, e.g., Lee v. Allstate Life Ins. Co.*, 361 Ill. App. 3d 970, 972 (2005) (affirming certification of class alleging that insurer improperly passed along increased tax liabilities); *Bhat v. AmerUS Life, et al*, 3:96-CV-04627 (N.D. Cal. 1999) (class action for "improperly pass[ing] on increased tax expenses that were incurred by [it] as a result of Congress' 1990 passage of the Deferred Acquisition Cost Tax (the 'DAC Tax') through increased cost of insurance charges").

8.  As a result of that first wave of COI litigation, many insurers changed their policy forms to expressly state that COI rates will also be based on taxes. John Hancock's policies are paradigmatic: whereas early versions of John Hancock's universal life policies often stated only that COI rates will be determined "based on our expectations of future mortality experience," most of John Hancock's post-2005 UL policies, including Plaintiffs' policies, explicitly identify taxes as a factor on which COI rates "will be based."

9.  It is apparent that John Hancock wrongly construes its policies as granting it a nonsensical "heads I win, tails you lose" power, reserving the right to *increase* COI rates in response to increasing tax liability, but not requiring it to *decrease* COI rates in the face of an unambiguous and far more dramatic reduction in tax liability that resulted from the TCJA. This interpretation is contrary to the plain language of the policies. As a result of this misconduct, Plaintiffs seek monetary relief for the COI overcharges that John Hancock has wrongly imposed on Plaintiffs and all of its similarly situated customers who each own policies with the same or materially identical language at issue here.

**THE PARTIES**

10. Plaintiff Zaben, LLC ("Zaben") is a limited liability company organized under the laws of New York with its principal place of business in Monsey, New York. Zaben owns a Protection IUL 15 policy issued by JHNY on September 26, 2017 with the policy number 46095140 (the "JHNY Policy").

11. Plaintiff Weinstock Partners LLC ("Weinstock") is a limited liability company organized under the laws of New York with its principal place of business in Cedarhurst, New York. Weinstock owns a Protection UL policy issued by JHUSA on May 10, 2016 with the policy number 93159493 (the "JHUSA Policy").

12. John Hancock Life Insurance Company of New York ("JHNY") is a corporation organized under the laws of New York and has its principal place of business in Valhalla, New York.

13. John Hancock Life Insurance Company (U.S.A.) ("JHUSA") is a stock life insurance company organized under the laws of the state of Michigan, with its principal offices in Boston, Massachusetts, and is the parent company of JHNY.

14. JHUSA and JHNY collectively issue life insurance policies throughout the United States. The ultimate parent of JHUSA and JHNY is Manulife Financial Corporation ("Manulife"), a Canadian-based insurance and financial services holding company.

**JURISDICTION AND VENUE**

15. This Court has original jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d) because this is a class action with diversity between at least one class member and one defendant, and the aggregate amount of damages exceeds $5,000,000. JHNY is incorporated and has its principal office in New York; JHUSA is incorporated in Michigan and has its principal

office in Massachusetts; Plaintiffs are citizens of New York; and unnamed class members are citizens of states across the United States. This action therefore falls within the original jurisdiction of the federal courts pursuant to the Class Action Fairness Act, 28 U.S.C § 1332(d).

16. This Court has personal jurisdiction over JHNY because it is a citizen and resident of this State. This Court has personal jurisdiction over JHUSA because it jointly administers its universal life policies with JHNY, jointly reviews COI rates with JHNY, transacts within this State, receives substantial revenue from this State, and has overcharged policyholders in this State, including Plaintiffs.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)–(d) because JHNY resides in this District and a substantial part of the events giving rise to the claim occurred in this District, including the issuance of policies in this District and the improper collection of COI rate overcharges from persons residing in this District, including Plaintiff Zaben.

## FACTUAL BACKGROUND

### A.   The COI Overcharge Policies at Issue

18. The policies at issue in this case are all flexible-premium, universal life policies ("UL" policies) issued by John Hancock or its predecessors-in-interest stating that COI rates are determined "based on our expectations of . . . tax assumptions." These policies are referred to as "COI Overcharge Class Policies." The COI Overcharge Class Policies are all form policies, and owners are not permitted to negotiate different terms. The COI Overcharge Class Policies are all contracts of adhesion.

19. Universal and variable universal life policies ("UL" policies) combine death benefits with a savings or investment component, often known as the "account value" or "policy value." One benefit of UL policies is that they permit policyholders flexibility in the amount and

timing of premiums necessary to keep the policies in-force. Unlike other kinds of whole life and term life insurance that require fixed monthly premium payments, the premiums required for UL policies need only be sufficient to cover the COI charges and certain other specified expenses. The COI charge, which is by far the largest charge imposed,[3] is deducted from the policy value (i.e., the savings component) of the policy every month, so the policyholder forfeits the COI charge entirely to John Hancock. Any premiums paid in excess of COI charges and other charges are applied to the account value. These excess premiums earn interest. This structure is beneficial because it allows policyholders to set the savings level within the policy and earn a return on those savings.

20. The size of the COI charge is highly material to universal life policyholders. First, it dictates the minimum amount of money that must be paid to keep a policy in force. Second, high COI rates can quickly diminish account value and reduce the amount of money on which interest can be earned. As a general matter, if the policy value diminishes such that COI charges and certain other specified expenses can no longer be deducted, then the policy will go into grace and, if no additional premiums are paid after adequate time provided by an accurate grace notice, the policy may lapse.

21. The JHNY Policy has the following language defining how the Cost of Insurance Rate used to calculate the COI charge will be determined:

> Our current **Cost of Insurance Rates** <u>will be based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and *tax assumptions*</u>, and will vary based upon the Life Insured's sex, Age and Risk Classification; the duration that the policy has been In Force; and any supplementary benefit riders. Periodically, we review our Cost of Insurance Rates and may re-determine Cost of Insurance Rates at that time on a basis that does not discriminate unfairly within any class of lives insured. These rates, however, will never exceed the Maximum Monthly Cost of Insurance Rates shown

---

[3] For example, the current monthly COI charge on just the Weinstock policy is roughly $2,900 per month.

in Section 2 as a rate per $1,000 of Net Amount at Risk. To get the maximum rate per dollar, the rate shown must be divided by 1,000.[4]

22. The JHUSA Policy has the following language defining how COI charges will be determined:

> The rates for the Cost of Insurance Charge are based on the Life Insured's Sex (if issued on a sex distinct basis), Age, Risk Classification, and duration that the coverage and any Supplementary Benefit riders have been in force.
>
> The Cost of Insurance Charge for a specific Policy Month is the charge for the Net Amount at Risk, including any Additional Ratings and any Supplementary Benefit riders which are part of the policy and for which charges are deducted from the Guaranteed Interest Account and are based on the Net Amount at Risk. The charge for the Net Amount at Risk is an amount equal to the per dollar Cost of Insurance Rate for that month multiplied by the Net Amount at Risk. **The Cost of Insurance Rate** will be based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and ***tax assumptions***.[5] The Maximum Monthly Cost of Insurance Rates at any Age are shown in Section 2 as a rate per $1,000 of Net Amount at Risk. To get the maximum rate per dollar, the rate shown must be divided by 1,000. Each Cost of Insurance Charge is deducted in advance of the applicable insurance coverage for which we are at risk.
>
> The Cost of Insurance calculation will reflect any adjustment for the Minimum Death Benefit.
>
> Periodically, we review our Cost of Insurance Rates, and may re-determine Cost of Insurance Rates at that time on a basis that does not discriminate unfairly within any class of lives insured. These rates however, will never exceed the Maximum Monthly Cost of Insurance Rates shown in Section 2, adjusted for any applicable Additional Ratings.

23. Under the language of both policies, if Hancock's expectations of future taxes change for the better (that is, if it expects future tax liability to decline), then COI rates change as

---

[4] Emphasis added.
[5] Emphasis added.

11310650v1/017697                         8

well. Hancock cannot simply ignore positive changes to its future expectations, while reserving the right to increase COI rates if negative changes occur.

**B.     John Hancock Fails to Reduce COI Rates Despite Benefitting from a Dramatic Decrease in Future Tax Liability After the Tax Cut and Jobs Act of 2017**

24.     Life insurance policies are typically priced on an after-tax basis, such that COI rates and other charges are, if permitted by contract, calculated to generate a certain level of after-tax profits. Prior to 2018, virtually every "multi-factor"[6] UL policy was priced with an explicit tax assumption that the federal income tax rate would be 35%. John Hancock priced the JHNY and JHUSA Policies and all other COI Overcharge Class Policies with an assumption that the corporate tax rate would remain at 35%.

25.     In 2017, the corporate tax rate was dramatically reduced from 35% to 21%. This was a boon for life insurers like John Hancock. Manulife, which owns JHUSA and JHNY, reported in 2018 that the expected impact of the TCJA "is an expected ongoing benefit to net income attributed to shareholders and core earnings of approximately $240 million per year commencing in 2018." Other insurers adjusted their tax assumptions in similar fashion. Prudential, for example, recognized a $2.88 billion tax benefit in its Consolidated Statements of Operations for the year ended December 31, 2017. Protective Life recognized a provisional $797.6 million tax benefit in its consolidated statement of income for the year ended December 31, 2017.

26.     The terms of both the JHUSA and JHNY Policies require JHUSA and JHNY to pass along those future tax reductions to policyholders via a COI decrease. Indeed, that is the entire purpose of variable rate contracts like universal life: if future expectations change for the worse, a

---

[6] A "multi-factor" policy is a policy that identifies numerous cost factors on which COI rates are based, such as mortality, investment earnings, persistency, expenses, and taxes. A "single-factor" policy identifies only one factor on which COI rates will be based—generally mortality. The COI Overcharge Class Policies are all multi-factor policies.

carrier can elect to increase rates if consistent with the language of the policies; if future expectations change for the better, rates must come down. But John Hancock has simply ignored its vastly improved tax expectations and left its pre-TCJA rate scale in place, in plain breach of its promise that actual COI rates "will be based on our expectations of future...tax assumptions."

27. It is impossible for any alleged deterioration in John Hancock's expectations for non-tax cost factors (e.g., mortality, expenses, interest, and persistency) to have offset the positive impact of the TCJA. The change in corporate tax rate alone implies that, for a profitable block of universal life policies, COI rates should be reduced by roughly 18%. The JHUSA Policy was issued on May 10, 2016 (less than two years before the TCJA was enacted), and the JHNY Policy was issued on September 26, 2017 (less than three months before the TCJA was enacted).[7] It is wholly implausible that John Hancock's mortality, expenses, investment earnings and persistency expectation, for example, suddenly deteriorated in 2017 at the exact same time as the TCJA was enacted, and offset entirely—and exactly—the dramatic reduction in corporate tax rates.

## CLASS ACTION ALLEGATIONS

28. This action is brought by Plaintiffs individually and on behalf of a class—the COI Overcharge Class—pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. The COI Overcharge Class consists of:

> All current and former owners of universal life (including variable universal life) insurance policies issued or insured by John Hancock Life Insurance Company (U.S.A.), John Hancock Life Insurance Company of New York, or their predecessors in interest that state that cost of insurance rates will be based on future expectations that include taxes, excluding (1) Defendants, their officers and directors, members of their immediate families, and the heirs, successors or assigns of any of the foregoing, and (2) the products at issue in *Leonard, et al. v. John Hancock Life Insurance Company of New York, et al.*, Case No. 18-CV-4994 (AKH) (S.D.N.Y.).

---

[7] The TCJA was signed into law on December 22, 2017.

29. Plaintiffs reserve the right to seek certification of subclasses, or alternative classes, by original issuing company, product, state of issue, or dates of ownership.

30. The COI Overcharge Class consists of hundreds or thousands of consumers of life insurance and are thus so numerous that joinder of all members is impracticable. The identities and addresses of class members can be readily ascertained from business records maintained by John Hancock.

31. The claims asserted by Plaintiffs are typical of the claims of the COI Overcharge Class.

32. Plaintiffs will fairly and adequately protect the interests of the class and do not have any interests antagonistic to those of the other members of the COI Overcharge Class.

33. Plaintiffs have retained attorneys who are knowledgeable and experienced in life insurance matters and COI matters, as well as class and complex litigation.

34. Plaintiffs request that the Court afford class members with notice and the right to opt-out of any classes certified in this action.

35. This action is appropriate as a class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common questions of law and fact affecting the COI Overcharge Class predominate over any individualized issues. Those common questions that predominate include:

    (a) the construction and interpretation of the form insurance policies at issue in this litigation;

    (b) whether John Hancock's actions in failing to decrease the cost of insurance charges imposed on the COI Overcharge Class violated the terms of those form policies;

(c) whether John Hancock breached the policy provisions stating that rates will be determined "based on our expectations of . . . tax assumptions;"

(d) whether Plaintiffs and members of the COI Overcharge Class are entitled to receive damages as a result of the unlawful conduct by Defendants as alleged herein and the methodology for calculating those damages.

36. A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a) the complexity of issues involved in this action and the expense of litigating the claims, means that few, if any, class members could afford to seek legal redress individually for the wrongs that Defendants committed against them, and absent class members have no substantial interest in individually controlling the prosecution of individual actions;

(b) when John Hancock's liability has been adjudicated, claims of all COI Overcharge Class members can be determined by the Court;

(c) this action will cause an orderly and expeditious administration of the class claims and foster economies of time, effort and expense, and ensure uniformity of decisions;

(d) without a class action, many class members would continue to suffer injury, and John Hancock's violations of law will continue without redress while defendant continues to reap and retain the substantial proceeds of their wrongful conduct; and

(e) this action does not present any undue difficulties that would impede its management by the Court as a class action.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

37. Plaintiffs reallege and incorporate herein the allegations of the paragraphs above of this complaint as if fully set forth herein. This claim is brought on behalf of Plaintiffs and the COI Overcharge Class.

38. The JHNY and JHUSA policies are binding and enforceable contracts.

39. John Hancock breached its contracts with Plaintiffs and the COI Overcharge Class by applying current COI rates that were not, and are not, based on future "tax assumptions" and deducting COI charges calculated based on those unlawful rates. The damages of Plaintiffs and the COI Overcharge Class include, but are not limited to, the excess COI charges that John Hancock deducted by not determining COI rates based on improved future tax assumptions.

40. John Hancock's failures also breach the covenant of good faith and fair dealing that is implied by law in all contracts.

41. Plaintiffs and the COI Overcharge Class have performed all of their obligations under the policies, except to the extent that their obligations have been excused by John Hancock's conduct as set forth herein.

42. As a direct and proximate cause of John Hancock's material breaches of the policies, Plaintiffs and the class have been – and will continue to be – damaged as alleged herein in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the class members pray for judgment as follows:

1. Declaring this action to be a class action properly maintained pursuant to Rule 23 of the Federal Rules of Civil Procedure;

2. Awarding Plaintiffs and the class compensatory damages;

3.       Awarding Plaintiffs and the class pre-judgment and post-judgment interest, as well as any costs and attorneys' fees allowed by law; and

4.       Awarding Plaintiffs and the class such other relief as this Court may deem just and proper under the circumstances, including without limitation reinstatement and other equitable relief for policies that lapsed or were surrendered after John Hancock's breach.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff and the class hereby demand a trial by jury as to all issues so triable.

Dated:  September 15, 2023                               Respectfully submitted,

/s/ Ryan C. Kirkpatrick
Seth Ard
Ryan C. Kirkpatrick
Zack Savage
Ari Ruben
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: 212-336-8330
Facsimile: 212-336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com
zsavage@susmangodfrey.com
aruben@susmangodfrey.com

Steven G. Sklaver (*pro hac vice* to be filed)
Glenn C. Bridgman (*pro hac vice* to be filed)
Halley Josephs
Kim Page (*pro hac vice* to be filed)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: 310-789-3100
Facsimile: 310-789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com

hjosephs@susmangodfrey.com
kpage@susmangodfrey.com

*Attorneys for Plaintiffs*