**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZABEN, LLC, and WEINSTOCK PARTNERS LLC, on behalf of themselves and all others similarly situated,<br><br>  Plaintiffs,<br><br>  vs.<br><br>JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK and JOHN HANCOCK LIFE INSURANCE COMPANY (U.S.A.)<br><br>  Defendants. | Civil Action No. 7:23-cv-08178-CS |

**Plaintiff Weinstock Partners, LLC's Reply in Support of Its Motion to Dismiss**

**TABLE OF CONTENTS**

I. New York Law Controls and Is Fatal to JHUSA's Counterclaim. ....................................2

    A. New York Law Determines Who May Exercise the Conversion Right. ................2

    B. JHUSA's Efforts to Distinguish *Dunken* and Other Authorities Fail ......................4

    C. None of JHUSA's Authorities Are Remotely Analogous ......................................7

    D. Hancock Is Rewriting the Terms of Its Policy............................................................8

II. JHUSA's Counterclaim Also Fails Under New Jersey Law. .............................................9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1070 Park Ave. Corp. v. Fireman's Fund Ins. Co.*,
 313 F. Supp. 3d 528 (S.D.N.Y. 2018), *aff'd*, 777 F. App'x 561 (2d Cir. 2019) ........................6

*A.M. Med. Servs., P.C. v. Progressive Cas. Ins. Co.*,
 101 A.D.3d 53 (2d Dep't 2012) ................................................................................................2

*ABB, Inc. v. Havtech, LLC*,
 176 A.D.3d 580 (1st Dep't 2019) .............................................................................................1

*Aetna Life Ins. Co. v. Dunken*,
 266 U.S. 289 (1924)............................................................................................................ *passim*

*Ameritas Life Ins. Co. v. Wilmington Trust, N.A.*,
 2024 WL 4402028 (C.D. Cal., 2024)....................................................................................3, 6

*Binkley v. Mans. Life Ins. Co.*,
 471 F.2d 889 (10th Cir. 1973) ..................................................................................................8

*Diehl v. Ogorewac*,
 836 F. Supp. 88 (E.D.N.Y. 1993) .............................................................................................4

*Erie Railroad Co. v. Tompkins*,
 304 U.S. 64 (1938)....................................................................................................................4

*Gans v. Aetna Life Ins. Co. of Hartford*,
 214 N.Y. 326 (1915) .................................................................................................................7

*Grigsby v. Russell*,
 222 U.S. 149 (1911)..................................................................................................................1

*In re Vadlamudi's Estate*,
 183 N.J. Super. 342 (1982) .....................................................................................................10

*Indian Harbor Ins. Co. v. City of San Diego*,
 972 F. Supp. 2d 634 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 726 (2d Cir. 2014)........................4

*Int'l Recovery Sys., Ltd. v. Greate Bay Hotel & Casino, Ltd.*,
 1997 WL 257477 (S.D.N.Y. May 16, 1997) ............................................................................3

*Jarmon v. American Heritage Life Ins. Co.*,
 267 A.2d 601 (Del. Super. Ct. 1970) ........................................................................................8

*Kallman v. Equitable Life Assur. Soc.*,
    248 A.D. 146 (1st Dep't 1936) ...................................................................................9

*Knoepfler v. Guardian Life Ins. Co. of Am.*,
    438 F.3d 287 (3d Cir. 2006)......................................................................................10

*Lincoln Nat'l Life Ins. Co. v. Ret. Value LLC*,
    2024 WL 3913090 (D.N.J. Aug. 20, 2024) ...............................................................7

*Mega-Trends Int'l, Inc. v. Beeba's Creations, Inc.*,
    1995 WL 322153 (S.D.N.Y. May 26, 1995) .............................................................7

*My Invs. LLC v. Starr Surplus Lines Ins. Co.*,
    2024 WL 4859027 (S.D.N.Y. Nov. 20, 2024) ...........................................................3

*Provident Life & Acc. Ins. Co. v. Kegley*,
    199 Va. 273 (1957) ....................................................................................................8

*Stevens & Co. LLC v. Espat*,
    2025 WL 950989 (S.D.N.Y. Mar. 28, 2025) .............................................................3

*Sun Life Assurance Co. v. Wells Fargo Bank N.A.*,
    208 A.3d 839 (N.J. 2019)..............................................................................4, 10, 11

*Telecom Int'l Am., Ltd. v. AT&T Corp.*,
    280 F.3d 175 (2d Cir. 2001).......................................................................................7

*Triple 'R' Enters., Inc. v. Pezotti*,
    344 N.J. Super. 31 (2001) .......................................................................................10

*Turner Const. Co. v. Seaboard Sur. Co.*,
    85 A.D.2d 325 (1st Dep't 1982) ................................................................................9

*Twitchell v. Town of Pittsford*,
    106 A.D.2d 903, 905 (4th Dep't 1984) ......................................................................7

*Willis Re Inc. v. Herriott*,
    550 F. Supp. 3d 68 (S.D.N.Y. 2021).........................................................................2

**Statutes**

N.J. Stat. § 17B:24-1.1..............................................................................................8, 9

N.Y. Ins. Law § 325........................................................................................................8

N.Y. Ins. Law § 3401......................................................................................................9

**Regulations**

N.Y. Comp. Codes R. & Regs. tit. 11, § 380.6(d) ................................................................................9

**Other Authorities**

Appleman on Ins. § 181.01 ..................................................................................................8

Couch on Ins. § 33:68 (3d 2025) .........................................................................................9

Dep't of Ins. Ltr., 2011 WL 13593329 (Feb. 25, 2011) ..................................................2, 6

Law of Life & Health Insurance § 5.20T (2025) ..............................................................10

JHUSA advocates for a new conversion rule that rewrites the Policy's plain language, defies Supreme Court precedent, and finds no support under New York or New Jersey law. JHUSA makes no credible effort to reconcile the Policy's language with its new rule. The Policy granted the policyowner the unequivocal right to change ownership, to convert "to any permanent plan of insurance offered for sale by the Company or one of its affiliated Companies," and to not have to present "evidence of insurability at the time of conversion." Policy, -192.[1]

JHUSA's arguments for retroactively voiding these promises fail. This dispute focuses on who can lawfully exercise the conversion right set forth in a New York contract entered between New York residents with a New York choice of law provision. Contrary to JHUSA's arguments, another state's laws cannot be used to abrogate a party's rights under a New York contract. *ABB, Inc. v. Havtech, LLC*, 176 A.D.3d 580, 581 (1st Dep't 2019) ("Non-New York statutes do not invalidate contracts that chose New York law and are valid and enforceable under New York law."). Since New York law controls, and JHUSA offers no argument that an insurable interest was required under New York law at time of conversion, that ends the matter.

JHUSA also loses under New Jersey law, even if it applied. The relevant insurance contract was made in 2008, when JHUSA's affiliate agreed to pay $2.5 million upon the death of the insured and sold a right to convert to any permanent insurance plan offered by its affiliates. That transaction—the taking out of life insurance—is what insurable interest laws are concerned with. *See Grigsby v. Russell*, 222 U.S. 149, 156 (1911) (cited in *Sun Life Assurance Co. v. Wells Fargo Bank N.A.*, 208 A.3d 839, 846-47, 849, 856 (N.J. 2019)). No new life insurance has been procured—JHUSA remains obligated to pay the same $2.5 million death benefit that its affiliate

---

[1] All abbreviations used herein follow the Motion.

1

agreed to pay in 2008. JHUSA continues to fail to identify any case from New Jersey or anywhere else supporting the new conversion rule it wants to create.

I. **New York Law Controls and Is Fatal to JHUSA's Counterclaim.**

　　A. **New York Law Determines Who May Exercise the Conversion Right.**

JHUSA doesn't contest that its counterclaim fails under New York law. JHUSA also concedes—as it must—that New York law governed the rights and obligations under the Policy. CC ¶ 18. And JHUSA also doesn't dispute that the Policy, as written, gave the policyowner the right to convert the Policy to the Converted Policy because the Converted Policy was a "permanent plan of insurance offered for sale by [JHNY] or one of its affiliated Companies." *E.g.*, Mot. 12.

This should end the inquiry. The dispute at issue in JHUSA's counterclaim is not about the interpretation of any provision in the Converted Policy; it is about who may exercise the conversion right in the Policy. As the NYDFS letter, 2011 WL 13593329, at *7 (Feb. 25, 2011), and *Aetna Life Ins. Co. v. Dunken*, 266 U.S. 289 (1924) demonstrate, that is an issue of New York law because that right stems from a New York contract with a New York choice of law provision. Policy, -187. Contrary to what JHUSA says, Resp. 20, that NYDFS letter is relevant and persuasive. *See A.M. Med. Servs., P.C. v. Progressive Cas. Ins. Co.*, 101 A.D.3d 53, 64 (2d Dep't 2012) ("The Superintendent's 'interpretation, if not irrational or unreasonable, will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision[.]'" (citation omitted)).

JHUSA asks the Court to nonetheless conduct a conflict-of-laws analysis to apply New Jersey law. Resp. 9-11. But the Policy has a New York choice-of-law clause, which means that courts should "not conduct a conflict of laws analysis." *Willis Re Inc. v. Herriott*, 550 F. Supp. 3d 68, 92 (S.D.N.Y. 2021) (cleaned up). And it does not matter which choice of law is selected in the Conversion Policy: in *Dunken*, the Court did not engage in a full conflict analysis, and instead

simply "applied to the permanent life insurance policy **the state law that governed the original term policy, not the state law in which the conversion occurred**." *Ameritas Life Ins. Co. v. Wilmington Trust, N.A.*, 2024 WL 4402028, at *10 (C.D. Cal., 2024) (explaining *Dunken*).²

JHUSA suggests that the exercise of the conversion privilege would "violate public policy," and should be declared unenforceable because of an alleged conflict with New Jersey's insurable interest statute. Resp. 6-8, 24. Even if JHUSA were right about New Jersey law (it is not), JHUSA's argument fails because "New York law does not provide for consideration of the interests of other states when an agreement is governed by a clause selecting New York law." *Stevens & Co. LLC v. Espat*, 2025 WL 950989, at *9 (S.D.N.Y. Mar. 28, 2025); *cf. My Invs. LLC v. Starr Surplus Lines Ins. Co.*, 2024 WL 4859027, at *3 (S.D.N.Y. Nov. 20, 2024) ("[A] New York choice of law clause in an insurance policy must be enforced notwithstanding a statute in the insured's home state voiding such clause."). JHUSA fails to articulate any New York policy interests served by refusing to enforce the conversion right as written.

Even if the Court were to conduct a conflict analysis, JHUSA would still lose because of New York's "important interest in ensuring that legal contracts made within its jurisdiction are enforced." *Int'l Recovery Sys., Ltd. v. Greate Bay Hotel & Casino, Ltd.*, 1997 WL 257477, at *3 (S.D.N.Y. May 16, 1997). Here, New York has an important interest in enforcing a conversion right under a contract entered by a New York resident, with a New York insurance company, that is governed by New York law. What's more, the Converted Policy's owner's "state of residence" was (as JHUSA concedes) also New York. CC Ex. I, at -8940. Contrary to JHUSA's argument (Resp. 20-21), these New York contacts easily satisfy the "modest restrictions" under the Full-Faith-and-Credit and Due-Process Clauses. *Diehl v. Ogorewac*, 836 F. Supp. 88, 92 (E.D.N.Y.

---

² All emphasis is added.

1993); *see also Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 652 (S.D.N.Y. 2013) (application of jurisdiction's law constitutional unless "arbitrary or fundamentally unfair"), *aff'd*, 586 F. App'x 726 (2d Cir. 2014) (cleaned up).

In a footnote, JHUSA suggests that the Court punt the choice-of-law question. Resp. 9 n.3. But this motion implicates a purely legal question: whether a secondary owner can exercise the conversion right in a contract issued to a New York insured by a New York life insurance company with a New York choice-of-law clause.

### B. JHUSA's Efforts to Distinguish *Dunken* and Other Authorities Fail.

To avoid New York law, JHUSA argues that *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), abrogated *Dunken* because *Dunken* applied federal common law. Resp. 17. That is wrong: courts across the United States rely on pre-*Erie* jurisprudence as persuasive and reflecting well-settled common law rules. JHUSA's leading authority relies extensively on pre-*Erie* Supreme Court decisions. *See Sun Life*, 208 A.3d at 844 & 846-47; Mot. 15 n.2. And JHUSA fails to identify any reasoning in *Dunken* that actually turned on any unique aspects of federal common law.

JHUSA also argues that the Converted Policy must be a "distinct, independent" policy under *Dunken* because the Policy "terminated." Resp. 11. But the "termination" label can be applied to every conversion, including in *Dunken*. *See Dunken*, 266 U.S. at 392 ("the old policy was **canceled**, stamped 'Surrendered new number, 152,755; $10,000,'"). It does not matter what label is applied to the original Policy under *Dunken*; what matters is whether "pre-existing obligations" in the Policy required issuance of the Converted Policy, *Dunken*, 266 U.S. at 399-400, as is the case here.

The Converted Policy's endorsement is also fatal to JHUSA's contention that these were "distinct, independent contracts."

4

> **ISSUED UPON EXERCISE OF CONVERSION PRIVILEGE**
>
> This policy is issued in accordance with the Conversion privilege on Policy No. 81729576 dated at this 10th of May 2016.
>
> President

Converted Policy, -8181.

The endorsement confirms that the Converted Policy was "issued in pursuance of, and [was] dependent for its existence and terms upon, the express provisions" of the Policy, just as in *Dunken*, 266 U.S. at 399.

The Converted Policy's integration clause—on which JHUSA relies (Resp. 1, 12-14)—confirms Plaintiff's position. The integration clause includes this endorsement. Converted Policy, -8178 ("The entire contract between the applicant and us consists of the policy, [the Term Conversion] application, and any riders and **endorsements**."). It also includes the application, which confirms that the Converted Policy was the direct result of the conversion right. Converted Policy, -8183.

JHUSA falls back on the argument that the Policy and Converted Policy are different contracts because a different affiliate issued the Converted Policy. Resp. 13. But the Policy accounted for this, providing that the policyowner could "elect to convert this policy to any permanent plan of insurance offered for sale by the Company *or one of its affiliated companies*," like JHUSA. Policy, -192. What mattered under *Dunken* is that the conversion policy's existence was "not as the result of any new negotiation or agreement but in discharge of pre-existing obligations," 266 U.S. at 399-400, just as here.

JHUSA also offers several new spins on this same theme. First, JHUSA claims that the Converted Policy changed Hancock's risk because its exposure now is "the difference between the

5

policy face amount and the cash surrender value." Resp. 13. But that applies to all term-to-universal-life conversions, and in any event, nothing in *Dunken* turns on whether an identical "risk" was assumed by the converted policy. "No new insurance is being purchased" where, as here, "the face amount of the policy is the same as the policy being converted," even if on "a different form and with different terms." NYDFS Ltr., 2011 WL 13593329, at *7 (Feb. 25, 2011).

Second, JHUSA tries distinguishing *Dunken* because the form of the Converted Policy was already agreed to when the term life policy issued. Resp 17-19. But nothing in *Dunken* turned on that nuance, and in *Ameritas* the terms of the conversion policy were not fixed. 2024 WL 4402028, at *2. There, like here, the conversion provision allowed the policyowner to convert to "***any*** permanent plan of insurance made ***available…at the time of conversion***." *Id.* (cleaned up); *see also* NYDFS Ltr., 2011 WL 13593329, at *7 (addressing a similar conversion provision without fixed terms).

Third, JHUSA tries distinguishing *Dunken* by arguing that there was some "negotiation" of the Converted Policy. Resp. 18. But the Policy and the Converted Policy are form contracts, whose terms are not negotiated. CC ¶ 37 n.1 ("The Weinstock Term Policy was issued in 2008 on form 07TERM-10G."); *id.* ¶ 37 (The UL policy "was issued on a policy form."); *cf. 1070 Park Ave. Corp. v. Fireman's Fund Ins. Co.*, 313 F. Supp. 3d 528, 536 (S.D.N.Y. 2018) ("[I]nsurance contracts tend to be form contracts, the terms of which are not negotiated."), *aff'd*, 777 F. App'x 561 (2d Cir. 2019). And the documents JHUSA relies upon to show "negotiation" show only that JHUSA's agent "met client" to discuss "all aspects of this sale," and that JHUSA and Plaintiff's broker discussed Plaintiff's options. Resp. 10, 12-13. The suggestion that the mechanics of exercising the owner's unrestricted right to conversion is a "negotiation" that somehow severs the causal link identified in *Dunken* is meritless.

6

###   C.   None of JHUSA's Authorities Are Remotely Analogous.

JHUSA fails to cite a single case ever requiring an insurable interest at conversion. So it trots out (inapposite) authority. JHUSA relies primarily on the New York Court of Appeals's decision in *Gans v. Aetna Life Ins. Co. of Hartford*, 214 N.Y. 326 (1915). There, however, the second policy "express[ed] no dependence or connection with the term policy." 214 N.Y. at 331. As the endorsement makes clear, that is the opposite of this case. The question in *Gans* was whether the suicide clause ran from the date of the original or converted policy, and the Court held that the converted policy's terms explicitly provided that it ran from the latter. *Id.* That has nothing to do with this case: Here, the terms of the Policy and Converted Policy are clear that the incontestability (and suicide) period runs from the Policy, not the Converted Policy, meaning JHUSA's attempt to contest the Converted Policy is 15 years too late. Policy, -192; Converted Policy, -8185.

The other cases JHUSA cites for its argument that the Policy "terminated" upon conversion are likewise far afield; none involve policy conversions. *See Telecom Int'l Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 191 (2d Cir. 2001); *Twitchell v. Town of Pittsford*, 106 A.D.2d 903, 905 (4th Dep't 1984); *Mega-Trends Int'l, Inc. v. Beeba's Creations, Inc.*, 1995 WL 322153, at *3 (S.D.N.Y. May 26, 1995) (cited Resp. 11-12). The case that JHUSA claims is "instructive" (Resp. 10-11), *Lincoln Nat'l Life Ins. Co. v. Ret. Value LLC*, 2024 WL 3913090, at *2 (D.N.J. Aug. 20, 2024) is also not a conversion case. The court there was unconvinced that the "group policy" had any contractual effect at all, much less that it provided an enforceable conversion right. *Id.* at *10-11.

JHUSA claims that "courts have repeatedly concluded converted-to policies" were "distinct, independent contracts." Resp. 15. But the only conversion cases JHUSA cites involve conversions from group policies, and none address whether an insurable interest is required at conversion. *See Jarmon v. American Heritage Life Ins. Co.*, 267 A.2d 601, 602 (Del. Super. Ct.

7

1970); *Provident Life & Acc. Ins. Co. v. Kegley*, 199 Va. 273, 274 (1957); *Binkley v. Mans. Life Ins. Co.*, 471 F.2d 889, 892 (10th Cir. 1973). Group life policies are different than individual life policies and subject to different rules. *See, e.g.*, N.J. Stat. § 17B:24-1.1(e) (stating that the insurable interest statute relied upon by JHUSA "shall not apply to group life insurance, group health insurance, blanket insurance or group annuities"). For example, in a group policy situation, the group policy "consists of one contract covering all insureds" (Appleman on Ins. § 181.01), so the group policy continues to exist alongside the converted policy when an individual converts. Here, as in *Dunken*, the Policy was **exchanged** for the Converted Policy, *see Dunken*, 266 U.S. at 400 ("[T]he second policy follows the status of the first for which it was exchanged."), and there is no ongoing, master group life policy at issue.

In short, the endorsement confirms that the Converted Policy was issued pursuant to conversion right under a contract entered by a New York resident, with a New York insurance company, that is expressly governed by New York law. New York law determines who may exercise that right. None of JHUSA's cases say otherwise.

D.   **Hancock Is Rewriting the Terms of Its Policy.**

Despite its headline "JHUSA is not 'rewriting' the terms of any policy," JHUSA is, in fact, doing that. Resp. 22-26. JHUSA argues "the conversion option is not absolute" by offering a hypothetical where a policyowner tries obtaining coverage from Manulife Japan. Resp. 24-25. JHUSA argues that because an alien insurer cannot sell insurance to New York residents, there must be extra-contractual limitations on this right. Resp. 25.

There are (at least) two deficiencies in this hypothetical. First, New York law prevents such a sale. N.Y. Ins. Law § 325. So it is not a foreign law limiting rights under a New York contract; it is New York law. Second, "offered for sale" is most reasonably read to mean "can be legally offered for sale." *See Turner Const. Co. v. Seaboard Sur. Co.*, 85 A.D.2d 325, 332 (1st Dep't 1982)

8

(cleaned up) ("It is well established that a contract should be construed to avoid illegality if possible."). Here, there is no dispute that it was legal for JHUSA to offer the Converted Policy to cover an insured who had relocated to New Jersey. Nothing in this hypothetical supports JHUSA's argument that a giant, unstated exception should be read into the conversion provision.

JHUSA also tries running away from its prior promise that "We will not require evidence of insurability at the time of conversion, up to the face amount of this policy" by walking a linguistic tightrope. JHUSA tries distinguishing *insurability* from *insurable* interest. Resp. 22-23. JHUSA's authorities do not support this distinction. Insurability includes "factors that influence the determination of the question as to whether in the first instance a policy will be issued by the insurer." 2 Couch on Ins. § 33:68 (3d 2025); *Kallman v. Equitable Life Assur. Soc.*, 248 A.D. 146, 148-49 (1st Dep't 1936). The question of whether a policy has an insurable interest is, of course, one such factor. Indeed, an insurance company cannot issue a policy unless it satisfies itself that an insurable interest supports a policy. N.Y. Ins. Law § 3401.[3] Having promised *not* to require evidence of insurability at conversion, JHUSA cannot avoid its obligations by claiming there was insufficient evidence at conversion.

## II. JHUSA's Counterclaim Also Fails Under New Jersey Law.

The result is the same under New Jersey law, which JHUSA wrongly says applies. New Jersey law requires an insurable interest "at the time when [an insurance] contract was made." N.J. Stat. § 17B:24-1.1(b). JHUSA's arguments proceed from the same incorrect premise—that a new insurance contract is "made" when a policyowner converts. Resp. 8. The general rule, per *Dunken*, is that "a term insurance policy that as a matter of contract right is convertible into another form,

---

[3] JHUSA's reliance on N.Y. Comp. Codes R. & Regs. tit. 11, § 380.6(d) only proves this point: of course, an insurer may only issue *additional* coverage, without underwriting, for the benefit of a person whom the insurer concludes has an insurable interest.

9

such as whole life, is a continuation of the policy." 2 *Law of Life & Health Insurance* § 5.20T (2025) n.3 (collecting cases); Mot. 15-16 (same). JHUSA offers no reason why New Jersey's Supreme Court would depart from this widely adopted view. *See Knoepfler v. Guardian Life Ins. Co. of Am.*, 438 F.3d 287, 295 (3d Cir. 2006) (declining insurer's construction where "there is no reason to believe that the New Jersey Supreme Court would depart from the majority view").

JHUSA makes much of the fact that that there is no enumerated exception in New Jersey's insurable interest statute for conversions. Resp. 7. But that begs the question, and is hardly surprising. It is "an established principle of statutory construction" that "absent an explicit statement of a contrary legislative intent, statutes are to be construed with reference to the principles of the common law, and the law infers that a statute does not intend to make any alteration to common law other than what is specified." *In re Vadlamudi's Estate*, 183 N.J. Super. 342, 347-48 (1982). The New Jersey legislature adopted the insurable interest statute against the common law backdrop defined by *Dunken*. If the New Jersey Legislature intended to depart from *Dunken* and the rule applied by the majority of jurisdictions to consider the issue, it would have so specified.

JHUSA also fails to explain how its interpretation coheres with the insurable interest statute's purpose. "[T]he polestar of any statutory analysis" is that "a statute should be construed sensibly and in furtherance of its underlying legislative purpose." *Triple 'R' Enters., Inc. v. Pezotti*, 344 N.J. Super. 31, 36 (2001). The purpose of the insurable interest statute is to ensure that the person procuring insurance on another's life has a legitimate financial or familial interest. *See Sun Life*, 208 A.3d at 841. So, for insurable interest purposes, what matters is when "the Company or one of its affiliated Companies" agreed to provide $2.5 million in life insurance on the life of the insured. That indisputably happened in 2008.

10

JHUSA does not meaningfully dispute that its interpretation would effectively preclude secondary owners from exercising the conversion option. JHUSA's rejoinder—that Weinstock could have sold his Policy to "a close relative or other person or business" with an insurable interest (Resp. 25)—is specious. Under a traditional life settlement, "investors purchase existing life insurance policies from insureds *who no longer need the insurance to protect their families in the event of their deaths*" and prefer an up-front payment. *Sun Life*, 208 A.3d at 848 (cleaned up). Take, for instance, the facts of this case: the original expiration date on the Policy was April 28, 2021. Policy, -187. If the conversion right were not exercisable by a secondary owner, the insured never would have received $100,000 in 2015 for his policy, and his wife would not have a continuing 10% interest in a $2.5 million policy that remains in force today. CC ¶¶ 28-29, 31.

Because there is no basis in New Jersey law for the novel rule that JHUSA seeks to create, even if New Jersey law somehow applied, the Court should still dismiss JHUSA's counterclaim with prejudice.

Dated:  October 21, 2025

/s/ Ryan C. Kirkpatrick
Seth Ard (SDNY No.: SA1817)
Ryan C. Kirkpatrick (SDNY No.: 5643721)
Ari Ruben (SDNY No.: AR1986)
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Telephone: (212) 336-8330
Facsimile:  (212) 336-8340
sard@susmangodfrey.com
rkirkpatrick@susmangodfrey.com
aruben@susmangodfrey.com

Steven G. Sklaver (*pro hac vice*)
Glenn C. Bridgman (*pro hac vice*)
Halley Josephs (SDNY No.: HJ1108)
Kim Page (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029

11

Telephone:  (310) 789-3100
Facsimile:   (310) 789-3150
ssklaver@susmangodfrey.com
gbridgman@susmangodfrey.com
hjosephs@susmangodfrey.com
kpage@susmangodfrey.com

Amy V. Hall (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
ahall@susmangodfrey.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF WORD-COUNT COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the 3,500 word limit set forth in Individual Rule 2(B)(i) and Local Civil Rule 7.1. The word count, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 3,471 according to the word-processing system used to prepare the document.

*/s/ Ryan C. Kirkpatrick*
Ryan C. Kirkpatrick

## CERTIFICATE OF SERVICE

I hereby certify this 20th day of October, 2025 that I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system which will send notification to the attorneys of record and is available for viewing and downloading.

*/s/ Ryan C. Kirkpatrick*
Ryan C. Kirkpatrick
